UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BETTIE PAGE LLC, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| DESIGN TECHNOLOGY HOLDING LLC,<br>DESIGN TECHNOLOGY GROUP LLC, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |
| | ) No. 1:14-cv-00394-SEB-TAB |
| DESIGN TECHNOLOGY HOLDING LLC,<br>DESIGN TECHNOLOGY GROUP LLC, | )<br>)<br>) |
| Third Party Plaintiffs/<br>Counter Claimants, | )<br>)<br>) |
| vs. | )<br>) |
| BETTIE PAGE LLC,<br>MARK A. ROESLER,<br>CMG WORLDWIDE, INC., | )<br>)<br>)<br>) |
| Third Party Defendants/<br>Counter Defendants. | )<br>) |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO SHOW CAUSE
AND TO HOLD DEFENDANTS AND RELATED PARTIES IN CONTEMPT**

**I. Introduction**

Plaintiff Bettie Page LLC filed a motion to show cause why Defendants and those in concert with them should not be held in contempt for allegedly violating a May 1, 2014, agreed order. Plaintiff asserts that Defendants Design Technology Holding LLC and Design

1

Technology Group LLC along with Tatyana Designs, Inc., Tatyana LLC, Tayana Khomyakova, and Jan Glaser violated the terms of this order by failing to completely disassociate their Tatyana clothing line from Bettie Page Clothing and other Bettie Page intellectual property. On January 12, 2015, the Court held a show cause hearing. With the benefit of briefing and this hearing, the undersigned recommends Plaintiff's motion to show cause [Filing No. 32] be granted in part and denied in part.

## II. Background

Prior to this lawsuit, Plaintiff and Defendants were in business together. Plaintiff is the "exclusive owner and proprietor of certain property rights in and to Bettie Page, including the rights of association, sponsorship and/or endorsement, and the rights of publicity in and to her name, likeness, voice, signature and visual representation, and holds certain trademark rights in and to the name and image of Bettie Page." [Filing No. 33, at ECF p. 2.] In 2006, Plaintiff entered into a licensing agreement with Defendants to allow Defendants to use certain Page intellectual property. By February 19, 2014, Plaintiff sent written notice to Defendants that it was terminating the licensing agreements. Termination became effective March 19, 2014. Plaintiff cited Defendants' material breach of their obligations under the contract as justification for terminating the agreement.

Shortly thereafter, Plaintiff filed this lawsuit on March 25, 2014, and applied for a temporary restraining order to restrain "[Defendant] and Defendants' agents . . . and anyone acting in concert with Defendants from using the name, image, likeness, signature, personae, certain trademark rights in and to the name and image of Bettie Page . . . in connection with Defendants' design, production, manufacture, advertisement, promotion, and/or sale of certain

retro women's apparel and accessories or other products."[1] [Filing No. 8.] Plaintiff and Defendants negotiated an agreed order on the motion for a temporary restraining order. This Court entered that agreed order on May 1, 2014. [Filing No. 14.] Plaintiff asserts that Defendants and related parties should be held in civil contempt because they violated this order. Websites, advertisements, promotions, and search engine keywords allegedly still exist that associate Defendants with Plaintiff and Plaintiff's intellectual property.

## III. Discussion

### A. Applicable law

It is within the Court's discretion to enter a finding of civil contempt. *Bailey v. Roob,* 567 F.3d 930, 933 (7th Cir. 2009). For the Court to find contempt, the moving party must establish by clear and convincing evidence that (1) there was an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant; and (4) the alleged contemnor did not make a reasonable and diligent effort to comply.[2] *U.S. S.E.C. v. Hyatt,* 621

---

[1] This is not the only lawsuit between these parties. Another lawsuit filed by CMG Worldwide (a third-party Defendant in this case) pends in this Court, and Chief Judge Young recently granted the Defendants' motion to dismiss. A motion for sanctions remains under advisement. *See CMG Worldwide, Inc. v. Glaser,* 1:14-cv-928-RLY-DKL. Plaintiff also filed an arbitration demand with the American Arbitration Association against Defendants, Tatyana LLC, and Tatyana Khomyakova. Defendants filed a response and a third party/counter claimant demand. Discovery is proceeding in the arbitration. [Filing No. 34, at ECF p. 5.] The present case is the only lawsuit among the parties that includes and relates to the May 1, 2014, agreed order.

[2] Plaintiff cites a slightly different standard for finding contempt: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) the decree was in the movant's favor; (3) the alleged contemnor's conduct violated the terms of the decree, and that the alleged contemnor had knowledge of such violations; and (4) the movant suffered harm as a result. *Eppley v. Iacovelli,* No. 1:09-cv-36-SEB-JMS, 2010 WL 724557, at *2-3 (S.D. Ind. Feb. 25, 2010). This test originates in the Fourth Circuit and the Seventh Circuit cites it as an example of one court's approach to an adequate civil contempt procedure. However, the Seventh Circuit does not rely on this test in its analysis, it only adopts the Fourth Circuit's requirement that a valid decree exist for a court to find civil contempt. *Manez v. Bridgestone Firestone North American Tire, LLC,* 533 F.3d 578, 590 (7th Cir. 2008).

3

F.3d 687, 692 (7th Cir. 2010). A violation is significant if the alleged contemnor did not substantially comply with the order. Id. An alleged contemnor that willfully refused to comply with a court order or failed to be reasonably diligent in attempting to accomplish the command will be found in contempt. Bailey, 567 F.3d at 935.

Civil contempt includes both coercive and remedial sanctions. Coercive sanctions "induce a party's compliance with a court order in the future, while remedial sanctions compensate an injured party for an opponent's past non-compliance." Id. at 933. In its motion, Plaintiff requests Defendants cease all reference to Bettie Page Clothing. Plaintiff also seeks payment from Defendants and nonparties Tatyana LLC, Tatyana Designs, Inc., Tatyana Khomyakova, and Jan Glaser for remedial advertising and Internet search engine experts to disassociate Defendants from Plaintiff. Plaintiff withdrew these requests at the hearing. Instead, Plaintiff seeks payment of $50,000 to $70,000 for each month Defendants and related parties violated the agreed order. This amount is equivalent to the contracted monthly rate Defendants paid to use Page's intellectual property rights. In addition, Plaintiff seeks a joint report from Defendants and related parties that identifies any and all instances since June 1, 2014, where they used or referred to Bettie Page or Page intellectual property.

Under Federal Rule of Civil Procedure 65(d), a nonparty may be held in contempt if the nonparty receives actual notice of the order by personal service; is a parties' officer, agent, servant, employee, and attorney; or is a person acting in concert or participation with a party. Fed. R. Civ. P. 65(d)(2). Defendants do not dispute that related parties Tatyana LLC, Tatyana

Designs, Inc., Tatyana Khomyakova, and Jan Glaser are bound by the agreed order as they are party officers, agents, and act in concert with Defendants.[3]

B. *Contempt finding*

1. Language of the agreed order

Plaintiff asserts that Defendants and their related parties violated paragraphs seven, eight, twelve, thirteen, and fifteen of the agreed order. The relevant portions of the May 1, 2014, agreed order are as follows:

- Paragraph seven provides that Defendants have:

  ceased use and/or the redirection of Internet domains bettiepageclothing.com . . . and any other domains and social media channels of which Defendants are currently aware that incorporate the terms 'bettiepage,' 'bettypage' and/or any other derivation of the Domains that incorporate Page Intellectual Property.

- Under paragraph eight, Defendants represent that:

  they are aware of no domains other than the Domains which feature or use the name 'Bettie Page' and/or any reasonably similar name that may allude or suggest associations with the Page Intellectual Property thereto and which are owned by any of the Defendants' parent companies, officers, shareholders . . . and/or those persons acting in concert or participation with Defendants.

- Paragraph twelve of the agreed order states:

  Defendants shall de-list, and disconnect any links, metatags, and/or directories between the Domains and the website located at Tatyana.com. [Plaintiff] will hold Defendants harmless for any unauthorized likes of which Defendants are not aware or the actions of third parties regarding de-identification; in short, Defendants shall not maintain and/or own and/or forward and/or in any way associate Defendants' business with the Domains. . . . Defendants shall use their

---

[3] Tatyana Design Inc. merged with Defendant Design Technology Holding LLC in 2012. Khomyakova and Glaser own the vast majority of post-merger common stock and are the Co-CEO's of Taytana Design Inc. Khomyakova is also the president, and Glaser is the treasurer. After the merger and for accounting purposes, Defendant Design Technology Holding LLC became the acquiring company. Khomyakova and Glaser are also directors and officers of Defendants. Tatyana LLC is a subsidiary of Design Technology Holding. Defendants and related parties all do business in concert as "Tatyana," a vintage-inspired clothing line. [Filing No. 33, at ECF p. 8.]

> best efforts to achieve complete disassociation between the Domains (and/or any later discovered Internet sites using Bettie Page) and Tatyana.com.

- Paragraph thirteen provides that Defendants:

  > shall not advertise, market, offer for sale, sell, or display any merchandise utilizing the Page Intellectual Property in any capacity as it pertains to Defendants' business and/or any related retail or Internet stores.

- Under paragraph fifteen of the order:

  > Defendants shall not use the Page Intellectual Property and/or any derivative thereof as keyword(s) for any Internet advertising service, including but not limited to services run by Google, Yahoo, Bing, or any other search engines.

[Filing No. 14, at ECF p. 3-5.]

2. Contempt allegations

Plaintiff argues that Defendants' and their related parties' Internet use violates the agreed order. Defendants allegedly owned and operated a "Bettie Page Clothing" Google Plus profile that purports to be Tatyana's San Francisco boutique and includes a tatyana.com link, which hyperlinks to the official Bettie Page Clothing website. [Filing No. 33-1, at ECF p. 4.] Defendants assert that they did not own and operate this profile name, and they had no knowledge that this profile existed before Plaintiff filed its motion to show cause. Nevertheless, Defendants contacted Google Plus about removing the Bettie Page Clothing profile. Google provided Glaser the password to access the Google Plus page on December 4, 2014. Immediately upon receiving that information, Defendants and related parties removed the Bettie Page reference. [Filing No. 39-1, at ECF p. 2.] Prior to that, Defendants did not have access to the page, and the owner of this Google Plus profile is still unknown.[4]

---

[4] Plaintiff intended to seek third party information from Google as to who owns this profile. [Filing No. 35, at ECF p. 6.] At the January 12 hearing, Plaintiff conceded that it did not seek such information. While the owner of the Google Plus profile account remains unknown, Glaser testified that he believed a former employee may have created and used the account.

Plaintiff asserts that Defendants should have had knowledge of the Google Plus profile's existence as the profile includes language from a press release issued by Defendants when they were doing business as Bettie Page Clothing. Plaintiff also asserts that Defendants' explanation is conclusory as they provide no evidence to suggest they have investigated the matter.[5] This is incorrect. In an affidavit, Glaser asserts that Defendants had no records of the profile page, no passwords to access the profile, they contacted Google in an effort to investigate, and had to wait for Google to provide them access to the profile before they could remove it. Glaser's affidavits set forth evidence that Defendants investigated the matter, were unaware of this profile's existence, and were not authorized to remove the profile without Google's assistance. [Filing No. 34-1, at ECF p. 6-8; Filing No. 39-1.] Under the agreed order Plaintiff is to "hold Defendants harmless for any unauthorized likes[6] of which Defendants are not aware." [Filing No. 14, at ECF p. 4.] Thus, the Magistrate Judge recommends that Defendants and related parties not be held in contempt for the Google Plus profile.

Plaintiff also contends that a Google, Yahoo, or Bing search of Tatyana LLC generates search results that reference Bettie Page Clothing ("Tatyana LLC- Home www.tatyanallc.com/ TL, Wholesale site for Bettie Page Clothing"). [Filing No. 33, at ECF p. 14.] Likewise, a search of tatyana.com references Bettie Page Clothing in the search results ("Tatyana Retro Inspired Women's Dresses and Rockability . . . www.tatyana.com/ Fashion design, throughout history has

---

[5] Plaintiff complains that Defendants should have contacted their San Francisco store, spoken with the San Francisco managers about this profile, and reviewed store emails and records because the agreed order requires that the Defendants use their best efforts to disassociate Plaintiff and Defendants.

[6] The parties noted at the hearing that the word "likes" in this section of the agreed order is a typo and should be "links."

turned to previous eras for inspiration. This is certainly true for Tatyana. When Tatyana founded Bettie Page Clothing and . . ."). [Filing No. 33, at ECF p. 11.] Similarly, tatyana.com's website content includes several references to Bettie Page Clothing— *i.e.,* "[Tatyana] founded her first clothing line, Bettie Page Clothing in 2006;" "Bettie Page Clothing was born;" "In 2014, Tatyana emerged from the Bettie Page Clothing line to unveil her new company." [Filing No. 33, at ECF p. 11-12.] Defendants admit that its Tatyana LLC search result referencing Bettie Page Clothing was an inadvertent oversight and have since removed it from their website.

As for the references on tatyana.com's website, Defendants argue that this does not violate the agreed order because the order only prohibits domain names referencing Bettie Page, not website content. Paragraphs seven and eight specifically discuss limitations on domain names, but paragraph thirteen prohibits any marketing, advertising, offering for sale, selling, or displaying of Bettie Page Clothing in any capacity. This includes website content. Defendants also assert that their Bettie Page Clothing references on tatyana.com explain that Plaintiff and Defendants are no longer associated with one another. Regardless, Defendants have removed the majority of tatyana.com's impermissible website content.

Currently, one reference to Bettie Page Clothing remains on tatyana.com—"In 2014, Tatyana emerged from Bettie Page Clothing line to unveil her new company: Tatyana. A fitting tribute to the designer and founder of several clothing lines, Tatyana transforms the retro style into one of elegance." Because this reference clearly indicates that Tatyana and Bettie Page Clothing are no longer associated, Defendants argue that it does not violate the agreed order as it does not infringe on Plaintiff's trademark. However, trademark infringement is not the issue presently before the Court. This reference to Bettie Page Clothing may be to disassociate the two companies, but it still suggests that there was at one point an association between the two

parties. This is impermissible under the agreed order that explicitly bars any association. Defendants argued at the hearing that it was necessary (though not legally required) that they inform their investors and the public of their disassociation with Bettie Page Clothing. Even so, they should have made a reasonable and diligent effort to comply with the order, such as by submitting for Plaintiff's approval potential language on the parties' relationship. Thus, the Magistrate Judge recommends that Defendants and related parties be held in contempt of the agreed order for the Bettie Page Clothing references on its Tatyana websites, including those references that were removed and the remaining reference presently maintained on tatyana.com.[7]

Moreover, Plaintiff argues that Defendants' Tatyana YouTube channel includes videos from Tatyana's Caesar's Palace boutique in Las Vegas that displays a video showing Bettie Page, Bettie Page signage/references on the wall, Bettie Page labels on dresses, and Bettie Page branded hangers. [Filing No. 33-1, at ECF p. 5-7.] Defendants admit that the video included these Bettie Page references and have subsequently removed the video from YouTube. Defendants explain that their videographer was to change the Bettie Page references to Tatyana boutique, but that the videographer accidentally overlooked the items Plaintiff now contests. However, Defendants assert that these Bettie Page references are insignificant as the videos mention Tatyana boutique twenty-seven times and the Bettie Page references are fleeting—appearing for 1.3 seconds or less. At the hearing, Glaser testified that they uploaded this video before any dispute arose, and it was one of the last videos on their YouTube channel, so one would have had to scroll through all their other videos to access it.

---

[7] The remaining reference can be found under the "Our History" tab on the website and is especially significant because Tatyana's website is an important and growing component of Tatyana's e-commerce strategy. [Filing No. 35, at ECF p. 11.]

Whether intentional or not, Defendants' video contains Bettie Page references, images, and videos that directly violate paragraph thirteen of the agreed order. However, the undersigned finds this violation not to be significant so as to warrant a contempt finding. The video was uploaded before the May 1 agreed order, the Bettie Page references were less than two seconds, the images were part of the background, and the video itself was not readily accessible on Defendants' YouTube channel.

Defendants also allegedly violated the agreed order at the August 2014 MAGIC[8] show in Las Vegas, where Defendants displayed posters that discussed Tatyana Khomyakova's career— "After starting Bettie Page Clothing in 2006 and being the sole designer, manufacturer and marketer of the line for eight years, it was a bitter sweet experience to say goodbye to the brand I founded and gave life to."[9] These same posters were displayed on Tatyana's website and social media. [Filing No. 33-1, at ECF p. 8-11.] Defendants and related parties assert that the purpose of these posters was to inform the public that Tatyana was no longer associated with the Bettie Page brand.[10] Moreover, Defendants allege that their use of the posters on social media was insignificant as they were too small and blurred to be readable. [*See, e.g.,* Filing No. 33-1, at ECF p. 8.] Indeed, the pictures of the posters on social media are not a significant violation of the agreed order. Even though they reference Bettie Page Clothing, the posters are too small for anyone to see the reference.

---

[8] MAGIC originally stood for Men's Apparel Guild in California. Since its inception, MAGIC and the MAGIC show has expanded to include women's apparel and accessories. *See* MAGIConline, www.magiconline.com (last visited Jan. 27, 2015).

[9] At the hearing, Plaintiff also contested the veracity of these posters.

[10] Defendants indicate that they would have immediately removed the poster at the MAGIC show had Plaintiff's agent, who took pictures of Tatyana's posters at the show, voiced his objections.

The undersigned finds Defendants' use of the posters at the MAGIC show violated the agreed order. The MAGIC show is a tradeshow for contemporary men's and women's apparel, footwear, accessories, and sourcing resources. It is considered one of the most comprehensive forums in the industry, and Defendants displayed their posters referencing Bettie Page Clothing as part of their tradeshow marketing scheme. Regardless of intent, the agreed order prohibits any reference to Bettie Page Clothing in any capacity for marketing and advertising. Defendants failed to abide by these terms.

Plaintiff also asserts that the website http://about.me/bettypageclothing impermissibly uses a Bettie Page Clothing logo and references Bettie Page. Because Defendants were unaware of this website's existence, they contend the agreed order protects them from liability. Glaser's affidavit declares that Defendants had no access to the website, no records of the website, and no passwords. Moreover, Glaser maintains they contacted About Me to remove the page upon receiving Plaintiff's motion. [[Filing No. 34-4](Filing No. 34-4).] They admit that this website should have been updated or removed in accordance with the agreed order, but with thousands of websites that needed to be updated, this particular website likely slipped through the cracks. Defendants argue that if Plaintiff would have brought this website to their attention sooner, they could have removed the page without the Court's involvement. Without knowledge of this webpage's existence, Defendants are protected under paragraph twelve of the agreed order, and therefore the Magistrate Judge recommends that Defendants not be held in contempt for their actions.

Even if Defendants did have knowledge, which Plaintiff has not proven by clear and convincing evidence, Defendants have been reasonably diligent in attempting to remove the About Me webpage. Defendants reviewed their records for the password, to which they found none. They also contacted the service provider regarding the profile. About Me deleted the

webpage December 1, 2014.[11] [Filing No. 39-1, at ECF p. 3.] No clear and convincing evidence exists to prove that Defendants were not reasonably diligent in complying with the order. A contempt citation for the About Me webpage is not warranted.

Plaintiff also suspects that Defendants violated paragraph fifteen of the agreed order, which concerns search engines and keywords, because Tatyana search results reference Bettie Page and Bettie Page Clothing. A search of Tatyana LLC includes a Bettie Page Clothing reference in the search results. Moreover, under the keyword search "bettie page dresses," tatyana.com is the first non-sponsored search result. Plaintiff speculates that "Tatyana LLC may be using the Page Intellectual Property or a derivative thereof as an internet search engine keyword violation of paragraph 15." [Filing No. 35, at ECF p. 15.] However, the Magistrate Judge does not believe a contempt citation is warranted given that Plaintiff provides nothing more than mere speculation to support its allegations. Defendants, on the other hand, list their efforts to stop all search-related associations and comply with the order. For example, they have blocked all inbound traffic to the domain bettiepageclothing.com, which prevents any inbound traffic and search engines from indexing the site. Moreover, Defendants have used no metadata referencing Bettie Page in the tatyana.com meta title, or description or keyword data since March 2014. [Filing No. 34-1, at ECF p. 2-3.]

Plaintiff submitted additional evidence in preparation for the January 12 hearing of a Tatyana Spring 2014 catalogue using the Bettie Page logo. [Filing No. 40-1, at ECF p. 2; Filing No. 40-3, at ECF p. 2.] Defendants attack the credibility of this evidence as it is undated, and

---

[11] Defendants sent an email to About Me on November 13, 2014, seeking to remove this webpage, and an About Me technician responded it would take one to two business days to remove the site. The technician emailed Glaser on December 1, 2014, to say that she removed the website. [Filing No. 39-2.]

they assert that this piece of evidence is misleading because the catalogue predated the agreed order. Any concern as to the validity of Plaintiff's submission of the undated Spring 2014 catalogue is mitigated by the fact that Plaintiff received this document from Defendants in response to its discovery requests in the arbitration proceeding. Even so, Defendants' Spring 2014 catalogue was posted online in February 2014 and was subsequently replaced with a version that omitted any Bettie Page reference prior to the agreed order. Thus, the Magistrate Judge recommends that Defendants not be found in contempt with respect to the Tatyana Spring 2014 catalogue.

In addition, Plaintiff submitted to the Court a letter posted on Defendants' website on February 25, 2014, which explains that Defendants were no longer manufacturing clothing under the Bettie Page label; that any existing stock already labeled Bettie Page would continue to be shipped under that name; and that a 25 percent discount would be available in the next few weeks for Bettie Page labeled clothing. [Filing No. 40-2, at ECF p. 2.] The Magistrate Judge recommends that Defendants not be found in violation for this letter. Defendants' letter was on their website before the parties filed their agreed order May 1, 2014, and the letter was removed prior to May 1. [Filing No. 41-1, at ECF p. 3.]

Plaintiff also included as evidence a January 2, 2015, picture of a Bettie Page Clothing logo on a closed storefront previously operated by Defendants. [Filing No. 40-6, at ECF p. 3, 5.] In his January 7, 2015, affidavit, Glaser notes that the pictured store with the storefront logo closed in June 2014 and that Defendants could not remove the logo themselves. [Filing No. 41-1, at ECF p. 6.] Instead, the landlord had to remove it. Defendants assert that they requested that the landlord remove the Bettie Page logo in June 2014, when the building was vacated, but that they did not follow up with the landlord as to whether the sign was removed until January 5,

2015, after Plaintiff submitted evidence of the existing signage. At the hearing, Plaintiff asserted that this storefront bearing the Bettie Page logo was vacant for over six months, which had a damaging effect on its company's reputation. The Magistrate Judge agrees. While Defendants did not have the authority to remove the sign on their own, reasonable diligence required them to have followed up with the landlord sooner than they did. If Defendants and related parties would have done so, the sign would have been removed more promptly and without the Court's involvement. This is especially true given that the landlord responded immediately to Defendants' January 5 request and indicated that the sign would be removed the following week. [Filing No. 41-8, at ECF p. 1.] Accordingly, the Magistrate Judge recommends a finding of civil contempt for the storefront logo.

After considering all the allegations before the Court, the undersigned finds Defendants and their related parties should be held in contempt, but only for violating paragraph thirteen of the agreed order for their MAGIC show posters, their references to Bettie Page Clothing on their Tatyana websites, and for the Bettie Page storefront logo.

    C. *Appropriate sanctions*

A civil contempt sanction is compensatory rather than punitive. *Heffernan v. American Airlines, Inc.,* No. IP01-546-C-Y/K, 2002 WL 318312, at *3 (S.D. Ind. Feb. 28, 2002). Remedial sanctions compensate the moving party for losses caused by contemptuous conduct, whereas coercive sanctions compel the contemnor into compliance with an existing order. *U.S. v. Dowell,* 257 F.3d 694, 699 (7th Cir. 2001). Plaintiff seeks both coercive and remedial sanctions. When determining what type of coercive sanction the civil contempt warrants, the court must consider: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose;

and (4) the willfulness of the contemnor in disregarding the court's order.  The determination of whether a particular remedy is warranted and necessary is within the court's discretion." *S.E.C. v. Brewer*, No. 10-C-6932, 2011 WL 3584800 (N.D. Ill. Aug. 15, 2011).  Remedial sanctions impose a fine that must be based on evidence of the moving party's actual loss.  *South Suburban Housing Center v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999).

To support its civil contempt sanctions, Plaintiff argues Defendants' and related parties' noncompliance likely diverted customers away from Bettie Page Clothing resulting in customer confusion and profit losses.  The harm from noncompliance could potentially be significant, but Plaintiff provided no estimates of the harm caused.  Moreover, Defendants submitted compelling evidence that Plaintiff has been selling Tatyana's clothing and using Tatyana's logos on its website.  [Filing No. 39-1, at ECF p. 3.]  Though this issue is not properly before the Court on its own motion, it signals that Defendants' association with Plaintiff is not as harmful as Plaintiff alleges.  If it were, Plaintiff would not be associating itself with Defendants.  Concerning the effectiveness of sanctions, Defendants and related parties have already removed the majority of the Bettie Page references from their stores, website, social media, and YouTube channel.  This includes the Google Plus and About Me profiles Defendants and related parties removed when they received access to the sites.  Thus, effectiveness would likely be slight.

In determining the appropriate coercive sanctions, the Court must also consider the Defendants' and related parties' financial resources and their willfulness in violating an order.  The parties present no evidence as to Defendants' inability to pay a Court-imposed sanction.  Indeed, the facts suggest that Tatyana boutiques have been fairly successful with locations in Las Vegas, Hollywood, San Francisco, San Diego, the Mall of America, Santa Barbara, and Salt Lake City.  Thus, the financial burden is low.  Considering the element of willfulness, the alleged

violations generally appear to be inadvertent and unintentional. Though Plaintiff submits that Defendants and related parties willfully violated the agreed order, there is no clear and convincing evidence to support this proposition. Moreover, Defendants have had the herculean task of disassociating themselves from Plaintiff after an eight-year business relationship and seventeen Bettie Page Clothing stores.[12] Thus, they assert that their violations were a mere oversight. Indeed, Defendants' quick resolution of their violations suggest that they were not willful in their noncompliance. While willfulness is a factor for the Court to consider in determining the appropriate sanction, a violation need not be willful for the Court to impose civil contempt sanctions. *Lightspeed Media Corp. v. Smith*, No. 3:12-cv-889-DRH-SCW, 2014 WL 1244079, at * 4 (S.D. Ill. Mar. 24, 2014) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1947)); see *S.E.C. v. McNamee,* 481 F.3d 451, 456 (7th Cir. 2007).

While Defendants have addressed the majority of the concerns Plaintiff submitted in its show cause motion, Defendants have not removed the final tatyana.com Bettie Page Clothing reference or stopped using the posters referencing Bettie Page Clothing. The undersigned endorses giving Defendants and related parties twenty-eight days upon the Court adopting this recommendation to cease referencing Bettie Page or Bettie Page Clothing pursuant to the agreed order. If Defendants and related parties fail to cease their reference to Bettie Page or Bettie Page Clothing, coercive sanctions may be appropriate. Given Defendants' willingness to respond to Plaintiff's concerns, coercive monetary sanctions are not appropriate at this time.

---

[12] Glaser testified at the hearing that it cost Defendants and related parties an estimated $1 million to disassociate themselves from Plaintiff. This included the extra staff they hired to disassociate the companies, as well as money spent to obtain a new URL and create new signage and logos. As Glaser stated at the hearing, "It was an administrative and Internet nightmare." He testified that Defendants did the best they could to disassociate the parties.

Plaintiff seeks a remedial monetary sanction of $50,000 to $70,000 for each month Defendants and related parties violated the order. This requested amount stems from the original contract between the parties and reflects what Defendants paid to use Plaintiff's intellectual property for the seventeen stores it operated under the Bettie Page license. However, under the contract, Defendants and related parties had unfettered use of Plaintiff's intellectual property rights for their seventeen storefronts and their Internet business. While Plaintiff's withdrawal of the remedial advertising costs and search engine expert costs show its effort to be reasonable in light of the alleged violations, Defendants' contempt citations do not rise to the amount Plaintiff seeks in remedial sanctions.

The majority of the issues before the Court on this motion could have been resolved without the Court's involvement if the parties would have just picked up the phone and talked with one another. Plaintiff asserted at the hearing that it was under no obligation to contact Defendants and related parties about the violations. Even so, a simple conversation would have saved the parties money and the Court time. More important, only three of Defendants' violations are actionable, Defendants have been reasonably responsive in resolving violations that have been brought to their attention, and Defendants spent an estimated $1 million in an effort to disassociate. Thus, Plaintiff's request for a monthly fee of $50,000 to $70,000 to remediate Defendants' contemptuous conduct should be denied.

Having said that, the Magistrate Judge finds it appropriate to award reasonable attorney fees and costs as Defendants' conduct caused Plaintiff to incur legal fees and expenses in seeking compliance with the agreed order. While Defendants did not willfully violate the order, intent is not required for remedial sanctions. *See McNamee*, 481 F.3d at 456 ("[S]cienter is not required in civil-contempt proceedings."); *McComb*, 336 U.S. at 191 (1949) ("Since the purpose is

remedial, it matters not with what intent the defendant did the prohibited act. . . . An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."). Defendants had a duty to obey the agreed order. They failed to do so. As a result, Plaintiff incurred fees in filing and arguing its motion to show cause. Therefore, the undersigned recommends that the parties be given twenty-eight days as of the date of adopting this recommendation to determine a reasonable award of attorney fees and costs. If the parties are unable to do so, Plaintiff shall by the twenty-eighth day submit a fee petition to the Court.

Plaintiff also seeks nonmonetary relief for Defendants' and related parties' violations. Specifically, Plaintiff requests that Defendants and related parties be ordered to:

> [file] a joint report with the Court within fourteen (14) days of the entry of the contempt order wherein Defendants and/or Related Parties be required to identify (by describing the use, the means of communication, where the communication occurred, the date of the communication, the identity of the disseminator(s) of the communication, the purpose of the communication, by whom the communication was made, the recipients of the communication (whether by name, or by category— e.g., customers in store, at trade show booth, and the approximate number of copies of the communication disseminated)) any and all instances (since June 1, 2014) in which any of them referred to Bettie Page and/or the Page Intellectual Property in any promotional, advertising, or marketing material, literature, videos, posters, signage, displays, or communication . . . including, without limitation, any and all uses of Bettie Page or any Page Intellectual Property or derivative thereof as a keyword, metatag, or metadata, in connection with any website, internet search engine, or social media.

[Filing No. 33, at ECF p. 23.] The need for such a detailed report at this juncture is puzzling. Defendants testified by way of an affidavit and testimony at the January 12 hearing as to the totality of their violations since June 1, 2014. Plaintiff's counsel cross-examined Glaser at the hearing. As Glaser testified, Defendants' conduct has ended or is ending. Defendants expressed what the Magistrate Judge believes to be a sincere willingness to respond to any of Plaintiff's concerns. Thus, Plaintiff's requested joint report would seemingly do little more than reflect that

18

to which Defendants have already testified and resolved or will resolve.  The undersigned finds this report unnecessary.

## IV. Conclusion

Defendants and related parties violated portions of the May 1, 2014, agreed order with its MAGIC show posters, website content, and vacated storefront logo.  Defendants did not otherwise violate this order.  As a result, Plaintiff's motion to show cause [Filing No. 32] should be granted in part and denied in part.  The undersigned recommends: (1) Defendants and related parties be held in contempt and ordered to cease all references to Bettie Page and Page intellectual property within twenty-eight days of the Court entering its final order on this motion; and (2) the Court award Plaintiff reasonable attorney fees for time spent in bringing and arguing this motion.  The parties should have twenty-eight days, upon the final order on this motion being entered, to agree on a reasonable amount of attorney fees and costs.  If they are unable to do so, the undersigned recommends that Plaintiff file a fee petition with the Court by the twenty-eighth day.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date:  1/28/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Mario L. Herman
ATTORNEY AT LAW
mherman@franchise-law.com

Scott E. Shockley
DEFUR VORAN LLP
sshockley@defur.com

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com